UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHAD E. BROWN, a/k/a "JBo,"<br><br>Defendant. | ) | No. 4:23CR521 MTS |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Chad Brown, a/k/a "JBo," represented by defense counsel Diane Dragan, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1 and 2 of the charge, the Government agrees that no further federal prosecution will be brought in this District relative to the defendant's bank fraud or false statement related to the submission of a fraudulent application for a paycheck protection loan on May 27, 2021, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count 1, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: a money judgment in the amount of $20,833.

**3. <u>ELEMENTS</u>:**

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1344, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are: (1) the defendant knowingly executed a scheme to obtain funds under the custody and control of a financial institution by means of false or fraudulent representations; (2) the defendant did so with the intent to defraud; and (3) the financial institution was insured by the Federal Deposit Insurance Corporation.

As to Count 2, the defendant admits to knowingly violating Title 18, United States Code, Section 1001, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are: (1) the defendant voluntarily and intentionally used a document containing a false statement in an application for a Small Business Administration Paycheck Protection Program loan, (2) at the time the defendant did so, he knew the document contained a

false statement; (3) the false statement was material to the Small Business Administration; and (4) the application for the loan was a matter within the jurisdiction of the Small Business Administration.

**4. <u>FACTS</u>:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enables and provides loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 pandemic emergency. Among its various provisions, the CARES Act authorized the SBA to guarantee loans under the Paycheck Protection Program ("PPP").

The PPP was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable, and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The SBA Form 2483 was to include supporting payroll documentation submitted to a financial institution that would administer the loan and serve as custodian of the funds. The applicant was required to certify information regarding business operations, including that: (a) the applicant was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes, or paid independent contractors, as reported on Internal Revenue Service (IRS) Form 1099-MISC; (b) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (c) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

When submitting the SBA Form 2483, the applicant certified his understanding that, should the PPP funds knowingly be used for unauthorized purposes, the United States could hold him legally liable, including criminal penalties for fraud involving fines and up to thirty years' imprisonment. The applicant was also required to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents, including documents submitted to verify the applicant's payroll expenses such as payroll processor records, bank records, wage records, payroll tax filings with the IRS, or other records sufficient to show the qualifying payroll amount.

PPP loan applications were electronically submitted or caused to be submitted by the applicant and received through SBA servers located in Oregon for applications submitted after January 11, 2021. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

The proceeds of the PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments.

The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

BSD Capital, LLC d/b/a Lendistry was a third-party participating lender in the PPP and a federally insured financial institution as defined in Title 18, United States Code, Section 20.

On or about March 13, 2019, the defendant established a Missouri company known as Popular Music Group, LLC, a limited liability company. In June 2020, Brown opened a U.S. Bank Account number ending in 1634 and titled Popular Music Group, LLC. Deposits into the U.S. Bank account during 2020 suggest income of approximately $9,861.02. On or about May 27, 2021, Brown submitted an application for an SBA PPP loan to Lendistry for $20,833 for Popular Music Group, a sole proprietorship. The application was approved. The primary business address was listed on the application as 11482 Daykin Drive, St. Louis, Missouri 63146. According to the application, Popular Music Group had $178,653 in gross income in 2020. Brown submitted a purported 2020 Schedule C showing gross income of $178,653 in support of the application. The Schedule C listed the business address as 4166 Fox Crossing Drive, Florissant, MO 63034.

Brown filed a tax return with the Internal Revenue Service for the 2020 tax year. Brown reported an adjusted gross income of $7,249. The only Schedule C that Brown filed in 2020 was for "towing services," and listed gross income of $8,250. Brown did not file a Schedule C for Popular Music Group in his 2020 tax filing.

Brown also filed a tax return with the Internal Revenue Service for the 2019 tax year. Brown reported an adjusted gross income of $23,800, which was the amount reported on a W-2

form from Shisha, LLC. No schedule C was included in Brown's tax return for 2019 for Popular Music Group or any other entity.

On or about June 29, 2021, SBA PPP loan funds of $20,833 were deposited into Arsenal Credit Union bank account number ending in 8021-0000, titled Chad Brown, 262 Vivaron Avenue, St. Charles, Missouri 63303. After the funds were transferred into the account, a $10,000 cashier's check was issued to Arthur Carmack on July 23, 2021. The funds were returned on July 24, 2021, and a wire for $10,025 was sent to Promoter PB Consulting & Booking, Arthur Carmack's company. Brown transferred $3,955.21 from the 8021-0000 account at Arsenal Credit Union to another account at Arsenal Credit Union. Brown then withdrew $2,703 in cash and transferred $1,234 via cash app to his sister, Sylvia Stevenson. Brown spent $1,275.45 on an Ally Bank payment, transferred $752 to his girlfriend, and $2,883.42 via CashApp and Zelle to other individuals and accounts. Brown did not use the SBA PPP loan funds for authorized expenses as required by the SBA.

Brown knowingly submitted false documentation to obtain $20,833 from the SBA through BSD Capital, LLC d/b/a Lendistry by submitting a false writing, a fraudulent IRS Schedule C, in support of the application for the loan. The materially false statements contained within the application caused Lendistry to distribute $20,833 to Brown.

**5. <u>STATUTORY PENALTIES</u>:**

As to Count 1: The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than thirty years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years.

As to Count 2: The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than five years, a fine of not more than $250,000, or both such imprisonment and a fine. The Court may also impose a period of supervised release of not more than three years.

**6. U.S. SENTENCING GUIDELINES (2023 MANUAL):**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: Pursuant to 2B1.1(b)(1)(C), 4 levels should be added because the loss exceeded $15,000.

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If after the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court,

and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) <u>Other Adjustments</u>:** The parties agree that the following additional adjustments apply: none.

**c. <u>Other Adjustment(s)/Disputed Adjustments</u>:** none.

**d. <u>Estimated Total Offense Level</u>:** The parties estimate that the Total Offense Level is 9.

**e. <u>Criminal History</u>:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. <u>Effect of Parties' U.S. Sentencing Guidelines Analysis</u>:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. <u>WAIVER OF APPEAL AND POST-CONVICTION RIGHTS</u>:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues**: The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

(2) **Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

b. **Habeas Corpus**: The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

c. **Right to Records**: The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER**:

a. **Disclosures Required by the United States Probation Office**: The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to

sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will

be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during their investigation, whether they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $20,833. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant

knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely

and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in

its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

1/29/2024
Date

JEANNETTE S. GRAVISS, #44483(MO)
Assistant United States Attorney

1/29/2024
Date

CHAD E. BROWN
Defendant

1/29/2024
Date

DIANE DRAGAN
Attorney for Defendant